IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FIRST AMERICAN TITLE INS. CO., :
:
    Plaintiff, :
:
    v. : Civ. No.10-99-LPS-MPT
:
JAMES A. HEGEDUS and VIRGINIA :
HEGEDUS, :
:
    Defendants. :

**MEMORANDUM OPINION**[1]

On February 8, 2010, Plaintiff First American Title Insurance Co. ("Plaintiff" or "First American") filed this action, seeking a declaratory judgment against *pro se* Defendants James A. Hegedus and Virginia Hegedus ("Defendants"). (D.I. 1) Plaintiff seeks a judicial determination that Defendants have no claim against Plaintiff under a title insurance policy Plaintiff issued to Defendants ("Policy"). On February 22, 2013, the Court held a bench trial. (*See* Trial Transcript) (hereinafter "Tr.") Based on the findings of fact and conclusions of law below, the Court will enter judgment for Plaintiff and against Defendants.[2]

---

[1] Pursuant to Federal Rule of Civil Procedure 52(a), this Memorandum Opinion contains the Court's findings of fact and conclusions of law.

[2] Plaintiff brings its action pursuant to Delaware's Declaratory Judgement Act, 10 Del. C. § 6501. *See also Hoechst Celanese Corp. v. National Union Fire Ins. Co.*, 623 A.2d 1133 (Del. Super. Ct. 1992). In order for a controversy to merit declaratory relief it must satisfy four requirements: (1) it must be a controversy involving rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which a claim of right or other legal interest is asserted against one who has interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; and (4) the issue involved in controversy must be ripe for judicial declaration. *See Rollins Int'l Inc. v. International Hydronics Corp.*, 303

## BACKGROUND

1.  On July 5, 2005, Robert L. Ross and Oneida Sandra Ross ("Rosses") acquired title to the property located at 20231 Cubbage Pond Road, Lincoln, DE 19660 (the "Property"). (Ex. P-6)[3]

2.  Defendants entered into an Agreement of Sale (the "Agreement") with Carl Spangler ("Spangler") to purchase the Property. (Tr. at 18, 21-22)

3.  Thereafter, the Rosses and Spangler entered into a subordination agreement, whereby the Rosses agreed to subordinate the Property to Spangler for the purpose of building a home to sell. (Tr. at 41) The Rosses continued to own the Property. Spangler testified that at no time was any ownership interest in the Property transferred to him. (Tr. at 17, 33, 38-39)

4.  On June 14, 2006, Defendants, the Rosses, Spangler, and Attorney Lisa Andersen – an agent of Plaintiff who also acted as Defendants' attorney and title agent – were all present for settlement, whereby the Property was conveyed by deed to Defendants from the Rosses. (Id. at 19) Spangler and Defendants were represented in the transaction by the same real estate agent. (Id. at 27) Defendants paid $275,000 to purchase the Property. (Ex. P-12 at FA0188) At settlement, Spangler received $181,223.98 in consideration for the work he had performed building the home on the Property, while the Rosses received $82,500.00 in consideration for their ownership interest in the Property. (Ex. P-12)

4.  By deed dated June 14, 2006, the Rosses conveyed all of their right, title, and

---

A.2d 660, 662 (Del. 1973). The controversy between Plaintiff and Defendants meets each of these criteria.

[3]Exhibits admitted at trial are referred to as "Ex." followed by an indication as to which party introduced them – "P" for Plaintiff, "D" for Defendants – and an exhibit number.

interest in the Property to Defendants. (Ex. P-13) Spangler did not sign the deed. (*Id.* at FA0191)

5. Also at the settlement, Andersen issued the Policy to Defendants, insuring their title to the Property. (Ex. P-14) Prior to issuance of the Policy, Andersen had conducted a title search and determined that Spangler never held an interest in the Property. (Ex. P-10)

6. Andersen issued two title commitments, the first identifying the lender Defendants anticipated using to finance their purchase of the Property and the second identifying the actual lender. (Tr. at 35-36, 66; Ex. D-33; Ex. D-34) The second commitment indicated that Spangler's signature – in addition to those of the Rosses – would be required on the deed. (Tr. at 38) The final title commitment indicates that title was conveyed by the Rosses. (Ex. P-11)

7. Spangler is listed as the Property owner on the MLS sheet and on the Trend listing agreement with ERA Realty. (Ex. D-14) These documents are used in the sale of real estate by licensed real estate agents for the purpose of giving potential buyers details about a property. (Tr. at 41) No evidence was presented that these documents create ownership interests or affect who is in the chain of title.

8. Spangler testified credibly that he never believed he had an ownership interest in the Property, has never asserted a claim of ownership, and will not in the future assert any claim of ownership. (*Id.* at 17, 20-21) Spangler further testified that at settlement he was paid all monies owed to him for the work he had performed on the Property. (*Id.* at 20-21) There is no evidence that Spangler has ever filed or asserted any claim against the Property.

9. Attorney Andersen, who has more than 15 years of real estate experience and has handled nearly 1000 closings, testified credibly that Spangler's signature was not necessary on

the deed because he had no interest in the Property. (*Id.* at 31, 38-39) Andersen testified credibly that a title search performed prior to settlement on behalf of Defendants found that there were no recorded documents which indicate Spangler, or anyone but the Rosses, held any interest in the Property. (*Id.* at 33) Andersen concluded that Spangler's signature was not required on the deed. (*Id.* at 38-39)

10. William Corrigan, Plaintiff's claims counsel who administered Defendants' claim, and who has more than 30 years experience, testified credibly that because Spangler had no interest in the Property, his signature was not necessary on the deed. (*Id.* at 51, 68, 70-71)

11. Defendants did not question the Rosses' presence at settlement. (*Id.* at 39-40) Nor did Defendants object at settlement to Spangler's failure to sign the deed. (*Id.* at 39)

12. The deed indicates that the title to the Property is subject to restrictions, including that the Property could only be used as a single family dwelling and that no business, occupation, or commercial activity which requires a state or county license could be conducted at the Property. (Ex. P-6 at 2) The deed was recorded in Deed Book 3168, page 333, Sussex County. (Ex. P-11 at FA0174)

13. The Policy issued by Plaintiff to Defendants states that exceptions to coverage are listed in Schedule B, which states:

> In addition to the Exclusions, you are not insured against loss, costs, attorney's fees and expenses resulting from:
>
> . . .
>
> 4. Subject to Restrictions contained in Deed recorded in the Office for the Recorder of Deeds in and for Sussex County in Deed Book 3168, page 333.

(Ex. P-14 at FA0195)

14. No evidence was presented at trial that Defendants were unaware of the deed restriction at the time they negotiated and purchased the Property, nor that they would have chosen not to proceed with the purchase of the Property had they been aware of it. Nor is there any evidence Defendants advised anyone prior to the settlement that they intended to use the Property to operate a business.

15. On December 4, 2008, Defendants filed a claim on the Policy with First American. (Ex. P-1) First American denied the claim. (Tr. at 57) Thereafter, Defendants continued to make claims, submit paperwork, and make requests of First American relating to the Property and the Policy. (*See, e.g.*, Ex. P-27; Tr. at 59) Over subsequent years, First American – including through inside and outside counsel – investigated and repeatedly denied Defendants' claim. (*See, e.g.*, Ex. P-25; Tr. at 50-61)

## DISCUSSION

There are three issues for the Court to decide:[4] (1) is the title Defendants received defective because Spangler did not execute the deed? (2) is the title Defendants received fraudulent? and (3) can Defendants pursue a claim against Plaintiff on the Policy due to the deed restriction that prevents them from operating a business out of their home? The facts and the law lead the Court to conclude that the answer to each of these questions is negative.

### A. The Deed Conveyed To Defendants Was Not Defective

The Rosses and Spangler had a business relationship by which Spangler acted on their

---

[4] The parties agreed at the pretrial conference that trial would be limited to these three issues. (*See* Transcript Feb. 4, 2013 at 30-32)

behalf to find a buyer for properties owned by the Rosses. Here, after Spangler found Defendants as potential buyers of the Rosses' Property, Spangler and the Rosses entered into a subordination of land contract for the Property. Typically, such an agreement permits the owner of land to subordinate its rights to real property so that the other party to the agreement can obtain a construction loan. Here, as the Rosses and Spangler contemplated, Spangler built a home on the Property. There is no evidence that at any point ownership of the Property transferred from the Rosses to Spangler. Spangler was not in the chain of title. Accordingly, he was not required to sign the deed. The deed conveyed at closing from the Rosses – who owned the Property – to Defendants was not defective.

### B.  The Deed Conveyed to Defendants Was Not Fraudulent

It follows that the deed conveyed from the Rosses to Defendants at settlement was not fraudulent. Spangler had no ownership interest in the Property, has never asserted any claim against the Property, and was not required to sign the deed. Even if Defendants were mistaken as to the identity of the Seller of the Property, Defendants received what that the Seller promised them: good and marketable title to the Property. There is no evidence of any fraud.

### C.  Defendants Have No Claim On The Policy Based On The Deed Restriction

The restriction that the Property not be used for a business existed prior to the execution of the Agreement between Spangler and Defendants and, therefore, prior to the transfer of the Property from the Rosses to Defendants. Defendants' acquisition of clear and marketable title did not mean that they were necessarily obtaining an entirely unrestricted deed. More importantly, the Policy expressly referenced the business restriction on the deed and excluded from coverage any claim based on that restriction. *See Westfield Ins. v. Chip Slaughter Auto*, 717

F. Supp.2d 433, 440 (D. Del. 2010) (stating where "language of an insurance policy is clear and unambiguous, the parties will be bound by its plain meaning"); *see also Pioneer National Title v. Child*, 401 A.2d 68, 69-70 (Del. 1979) (holding title insurance policy is subject to same rules of construction as other insurance policies). Accordingly, Defendants have no claim against Plaintiff on the Policy based on the deed restriction.

## CONCLUSION

Accordingly, for the reasons stated above, judgment will be entered FOR Plaintiff and AGAINST Defendants, both as to Plaintiff's request for declaratory judgment (D.I. 1) and as to Defendants' counterclaim (D.I. 6). Plaintiff shall submit, *no later than August 15, 2013*, a proposed form of order consistent with this Memorandum Opinion.

August 1, 2013  
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE